IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

OMAR RIOS COLON, on behalf of himself and all others similarly situated,

                          Plaintiff,

  - against -

DECISIONONE CORPORATION,

                         Defendant.

-------------------------------------------------------------X

Case No.: 23 Civ. 5346 (JMA)(ARL)

**DECLARATION OF GARRETT KASKE IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

I, Garrett Kaske, hereby declare as follows:

1.     I am a partner of the law firm of Kessler Matura, P.C. ("KM"), counsel for Plaintiff, and fully familiar with the facts and circumstances of this matter.

2.     I make this declaration pursuant to Rule 55.2 of the Civil Rules for the Eastern District of New York, in support of Plaintiffs' Motion for Default Judgment against Defendant DecisionOne Corporation ("DecisionOne" or "Defendant").

3.     KM filed the Complaint in this action on July 13, 2023.

4.     Defendant was served on July 27, 2023, via New York Secretary of State, in accordance with Section 306 of the New York State Business Corporation Law. *See* DE 7 (Aff. of Serv.).

5.     Defendant's Answer was due on August 17, 2023. *See* DE 7.

6.     Defendant failed to answer the Complaint.

7.     On August 23, 2023, KM sent a letter with a copy of the filed Complaint in this case to Defendant's headquarters, located at 640 Lee Road, Third Floor, Wayne, PA 19087. The letter advised Defendant of its default and time to cure the default. The letter was sent by FedEx Overnight (Tracking No. 773147029266).

8.      Defendant did not contact KM or answer the Complaint.

9.      Defendant is not in military service, as Defendant is a corporation.

***Service Pursuant to Local Civil Rule 55.2(c)***

10.     Plaintiff is serving this motion at Defendant's last known address, pursuant to Local Civil Rule 55.2(c), simultaneous to filing this motion for a default judgment.

11.     Today, September 12, 2025, prior to e-filing this motion, Plaintiff sent a copy of the following papers to Defendant via FedEx (Tracking No. 884332801566) to Defendant's headquarters:

    a.  Notice of Plaintiff's Renewed Motion for Default Judgment;

    b.  Plaintiff's Memorandum of Law in Support of Plaintiff's Renwed Motion for Default Judgment; and,

    c.  The instant Declaration of Garrett Kaske in Support of Plaintiff's Renewed Motion for Default Judgment, including all attached exhibits.

12.     These motion papers were placed in a FedEx envelope, with shipping pre-paid, addressed to Defendant at DecisionOne Corporation, 640 Lee Road, 3rd Fl., Wayne, PA 19087, sealed and deposited into the FedEx Drop Box located on the first floor at 534 Broadhollow Road, Melville, New York 11747.

***Damages and Costs***

13.     KM estimates that Plaintiff is owed $3,868.96 in liquidated damages under the Fair Labor Standards Act, plus $126.26 in interest under the New York Labor Law.

14.     I arrived at that amount by adding up all wages owed as reflected on Plaintiff's final pay stub for the years he worked, 2018 through 2020. See Ex. A-2, A-3, A-4 (Paystubs). While the paystubs include holiday, vacation, sick, and disability pay, I did not add those amounts to the

calculation. Rather, only the pay coded as "OT for H," "Overtime," "Reuglar," "On Call," and "STD 50%" were tallied. These totals are as follows:

| Year | Total Gross Wages |
|------|-------------------|
| | **$123,490.60** |
| **2018** | **$34,566.00** |
| OT for H | $573.36 |
| Overtime | $5,192.64 |
| Regular | $28,800.00 |
| **2019** | **$43,213.20** |
| OT for H | $274.32 |
| Overtime | $6,734.88 |
| Regular | $32,064.00 |
| On Call | $300.00 |
| STD 50% | $3,840.00 |
| **2020** | **$45,711.40** |
| OT for H | $325.92 |
| Overtime | $735.84 |
| Regular | $38,768.64 |
| On Call | $793.00 |
| STD 50% | $5,088.00 |

15.     These amounts were then divided into two groups: the wages earned before July 13, 2020 (the "NYLL Period") and those earned on or after July 13, 2020 (the "FLSA Period"). This was done by backing out the earnings to date on the July 10, 2020, paystub for Plaintiff (Ex. F) from the 2020 totals above. The result was the following:

| Year | Wages in NYLL Period Only (Before 7/13/2020) | Gross Wages in FLSA Period (After 7/12/2020) |
|------|----------------------------------------------|----------------------------------------------|
| **-** | **$99,576.04** | **-** |
| **2018** | **$34,566.00** | - |
| OT for H | $573.36 | - |
| Overtime | $5,192.64 | - |
| Regular | $28,800.00 | - |
| **2019** | **$43,213.20** | **-** |
| OT for H | $274.32 | - |
| Overtime | $6,734.88 | - |
| Regular | $32,064.00 | - |
| On Call | $300.00 | - |
| STD 50% | $3,840.00 | - |

| 2020 | $21,796.84 | $23,914.56 |
|---|---|---|
| OT for H | $325.68 | $0.24 |
| Overtime | $0.00 | $735.84 |
| Regular | $15,590.16 | $23,178.48 |
| On Call | $793.00 | - |
| STD 50% | $5,088.00 | - |

16.     Starting with the NYLL Period damages, I divided the total wages in this period by two, as Plaintiff's wages were only late for the first week of each two-week period.  Then, the late-paid wages were multiplied by 16% interest at a rate that accounts for the seven-day delay.  That is, each wage category was multiplied by 0.16 x (7/365).  This results in $126.26 in damages, broken down as follows:

| Year | Wages Paid Late in NYLL Period | NYLL Damages (Late Wages * 0.0030685…) |
|---|---|---|
| - | $49,788.02 | $126.26 |
| 2018 | $17,283.00 | $26.52 |
| OT for H | $143.34 | $0.44 |
| Overtime | $1,298.16 | $3.98 |
| Regular | $7,200.00 | $22.09 |
| 2019 | $21,606.60 | $66.30 |
| OT for H | $137.16 | $0.42 |
| Overtime | $3,367.44 | $10.33 |
| Regular | $16,032.00 | $49.19 |
| On Call | $150.00 | $0.46 |
| STD 50% | $1,920.00 | $5.89 |
| 2020 | $10,898.42 | $33.44 |
| OT for H | $162.84 | $0.50 |
| Overtime | $0.00 | $0.00 |
| Regular | $7,795.08 | $23.92 |
| On Call | $396.50 | $1.22 |
| STD 50% | $2,544.00 | $7.81 |

17.     Then, to arrive at the FLSA Period damages, I divided the earnings in each category by the rate paid to arrive at the number of hours that were paid for.  I then divided that by two, to account for the fact that Plaintiff's wages were only late for the first week of each two-week period,

and then multiplied the result by $7.25, the minimum wage, for all regular hours, and $36.00, Plaintiff's overtime rate, for his overtime hours.  The result is as follows:

| Year | Wages in FLSA Period | Rate Per Hour | Hours | Late Hours | Damages Per Hour | FLSA Damages |
|---|---|---|---|---|---|---|
| - | - | - | - | - | - | **$3,868.96** |
| **2020** | **$23,914.56** | | **986.217** | **493.108** | | **$3,868.96** |
| OT for H | $0.24 | $36.00 | 0.007 | 0.003 | $36.00 | $0.12 |
| Overtime | $735.84 | $36.00 | 20.440 | 10.220 | $36.00 | $367.92 |
| Regular | $23,178.48 | $24.00 | 965.770 | 482.885 | $7.25 | $3,500.92 |

18.     In addition, Plaintiff seeks costs of $497.39; $402 in filing fees and $22.71 for the costs of mailings, and $72.68 in costs for service of process.  *See* Ex. D.

19.     Plaintiff is not seeking attorneys' fees.

***Documents***

20.     Attached as **Exhibit A** is a copy of the Declaration of Plaintiff Omar Rios Colon ("Rios Colon Decl.").

21.     Attached as **Exhibit A-1** is a copy of the letter from Defendant to Plaintiff, offering Plaintiff employment ("Offer Letter").

22.     Attached as **Exhibit A-2** is a copy of the paystub received by Plaintiff from Defendant to accompany his paycheck on December 28, 2018.

23.     Attached as **Exhibit A-3** is a copy of the paystub received by Plaintiff from Defendant to accompany his paycheck on December 27, 2019.

24.     Attached as **Exhibit A-4** is a copy of the paystub received by Plaintiff from Defendant to accompany his paycheck on December 24, 2020.

25.     Attached as **Exhibit B** is a printout from a portion of Defendant's website (www.decisionone.com), as it appeared on November 1, 2023 ("Webpage").

26.     Attached as **Exhibit C** is a printout of Defendant's LinkedIn page, as it appeared on November 1, 2023 ("LinkedIn").

27.     Attached as **Exhibit D** consists of invoices, including proof of payment to the Court for filing and an invoice for service of process.

28.     Attached as **Exhibit E** is the proposed order.

29.     Attached as **Exhibit F** is a copy of the paystub received by Plaintiff from Defendant to accompany his paycheck on July 10, 2020.

30.     Attached as **Exhibit G** is a copy of the transcript from the hearing on August 14, 2025, in the matter of *Feliciano v. JPJ Franklin LLC*, NO. 25 Civ. 1929 (E.D.N.Y.).

*       *       *       *

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated:  Melville, New York
        September 12, 2025

                                            Respectfully submitted,

                                            Garrett Kaske

                                            Troy L. Kessler
                                            Garrett Kaske
                                            Benajmin Goldstein
                                            **KESSLER MATURA P.C.**
                                            534 Broadhollow Road, Suite 275
                                            Melville, New York 11747
                                            Telephone: (631) 499-9100
                                            tkessler@kesslermatura.com
                                            gkaske@kesslermatura.com
                                            bgoldstein@kesslermatura.com

                                            *Attorneys for Plaintiff*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
OMAR RIOS COLON, on behalf of himself and all :
others similarly situated,                       :
                                                 :
                                                 :    Case No.: 23 Civ. 5346 (JMA)(MW)
                        Plaintiff,               :
        - against -                              :    **DECLARATION OF OMAR RIOS**
                                                 :    **COLON IN SUPPORT OF**
DECISIONONE CORPORATION,                         :    **PLAINTIFF'S MOTION FOR**
                                                 :    **DEFAULT JUDGMENT**
                        Defendant.               :
                                                 :
-------------------------------------------------------------- X

Plaintiff Omar Rios Colon declares as follows pursuant to 28 U.S.C.§ 1746, I hereby

declare as follows:

***Employment and Job Duties***

1.      I was employed by Defendant DecisionOne Corporation ("DecisionOne") from on

or around May 21, 2018 to in or around May 2022.

2.      However, due to a car accident, I was on disability leave, making my last day of

physical work December 7, 2020.

3.      A copy of the letter I received from DecisionOne offering me employment is

attached as <u>Exhibit A-1</u>.  The letter is a true and correct copy of the letter I received from

DecisionOne prior to starting my employment with the company.

4.      DecisionOne's business consists of information technology ("IT") support services.

The company provides support for its clients' IT machines, such as printers, self-check machines,

cash registers, and credit card machines.  Clients include businesses in the retail, transportation,

healthcare, and government sectors.

5.      I held the position of Field Service Technician.

1

6.     As a Field Service Technician, I travelled from client to client, providing on-site maintenance and installation of machines from various name-brand manufacturers.

7.     Most of my work time was spent performing physical labor.  At each client site, I carried tools from my automobile into the job site and either performed maintenance on or installed large machines, such as printers, self-check-out machines, and credit card machines.  As part of that process, I often had to move heavy machines to gain access to necessary components and wiring.  I had to open and close machines with my tools and extract and install machine parts.

8.     The large majority of clients I visited were in Nassau County, Suffolk County, Queens County, Kings County, and Bronx County, New York.

*Payroll Practices*

9.     DecisionOne paid me at a regular rate of $24 per hour.

10.     DecisionOne paid me every other week.

11.     Payday occurred one week after the end of each two-week pay period for the entirety of my time at DecisionOne.

12.     For example, DecisionOne paid me on December 28, 2018 for the pay period of December 8 to December 21, 2018.

13.     A copy of the pay stub I received from DecisionOne for the check issued on December 28, 2018 is attached as Exhibit A-2.  The pay stub is a true and correct copy of the document I received to accompany my pay from December 28, 2018.  The pay stub accurately reflects the amount of pay I received and the timeframe the pay covered.

14.     DecisionOne paid me on December 27, 2019 for the period starting on December 7, 2019 and ending on December 20, 2019.

15.    A copy of the pay stub I received from DecisionOne for the check issued on December 27, 2019 is attached as <u>Exhibit A-3</u>.  The pay stub is a true and correct copy of the document I received to accompany my pay from December 27, 2019.  The pay stub accurately reflects the amount of pay I received and the timeframe the pay covered.

16.    DecisionOne paid me on December 24, 2020 for the period starting on December 5, 2020 and ending on December 18, 2020.

17.    A copy of the pay stub I received from DecisionOne for the check issued on December 24, 2020 is attached as <u>Exhibit A-4</u>.  The pay stub is a true and correct copy of the document I received to accompany my pay from December 24, 2020.  The pay stub accurately reflects the amount of pay I received and the timeframe the pay covered.

18.    Over the course of my employment with DecisionOne, I made approximately $109,672.60, excluding vacation pay, holiday pay, sick pay, disability pay, and expense reimbursements.

*      *      *      *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on _____.

11/2/2023

**Omar Rios Colon**

3

DocuSign Envelope ID: B73A3266-D6A4-4480-A7FD-0620D7593E82

## CERTIFICATE OF TRANSLATION

Pursuant to 29 U.S.C. § 1746, I, KRISTINE JIMENEZ, hereby declare under penalty of

perjury that I am fluent in both Spanish and English, and that I translated the foregoing document

from English to Spanish to Omar Rios Colon.

Dated: Melville, New York
       November 2, 2023.

_____
KRISTINE JIMENEZ

# Exhibit 1



Omar Rios Colon                                                                                    5/10/2018



Dear Omar,

I am pleased to confirm the offer of full-time employment with DecisionOne in the position of Field Service Technician. You are scheduled for a start date of 5/21/2018.

The starting hourly rate for this position will be $24.00.

You will be working at 3423 Southpark Place, Grove City, OH and reporting to Jim Davis. Based upon business need your hours may change as determined by your manager.

This position is classified as non-exempt (overtime eligible). Overtime compensation will be provided at a rate of 1.5 times your hourly rate for hours worked in excess of 40 in any work week. You will be eligible to accrue 6.67 vacation hours per month to a maximum of 2 weeks' vacation until you are eligible to accrue at a higher rate per the DecisionOne Vacation Policy.

You and your eligible dependents are eligible to participate in the DecisionOne Benefits Plan on the 1st day of the month after 30 days of employment, provided you are actively at work.  You are eligible for the following benefits: Medical, Dental, Life Insurance, Long-Term Disability, Sick time, and the Education Assistance program.  You are eligible for the DecisionOne Short-Term Disability Plan on the 182nd day of employment, provided you are actively at work on the 182nd day.
**Please note, you have 30 days from the date of eligibility to sign up for the DecisionOne benefit plans.  If you do not elect benefits in this timeframe, you will forfeit your opportunity until the next Open Enrollment Date (typically January 1st of each year).**

This offer letter is not intended to be, and should not be construed as, a contract of employment for any specific period of time. Employment at DecisionOne is at-will, which means that either you or the Company may terminate your employment at any time. DecisionOne also reserves the right to change the terms and conditions of employment, including the provisions of compensation and benefit programs, at any time.

Your offer of employment is contingent upon the successful completion of a background screening and drug test.  In addition to you're signing of the DecisionOne Code of Conduct, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement, Conflict of Interest Questionnaire, and Employee Confidentiality Agreement.  Please see attached the New Hire Checklist for all other required documents to be submitted. You also will be required to verify your eligibility to work in the United States.

Please sign the offer letter in the space provided to indicate your acceptance of this offer.  Please return to the attention of Human Resources at e-mail: Michael.Matscherz@decisionone.com. If you have questions, please contact Mike Matscherz at 610.296.2977.

Sincerely,
DecisionOne
Human Resources

**I understand my employment is contingent upon the successful completion of a drug test and background screening.**


Omar Rios Colon _____**Date** _____.

# Exhibit 2

**Decisionone Corporation**
640 Lee Rd
3rd Floor
WAYNE, PA 19087

**paylocity**

Direct Deposit Advice

| | **Check Date** | **Voucher Number** |
|---|---|---|
| | December 28, 2018 | 106788 |

DIRECT DEPOSIT VOUCHER

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| ███████ | C | ████████ | 2,191.73 |
| | **Total Direct Deposits** | | **2,191.73** |

N9665   20-140900   ████████   **N9665**

**Omar Xavier Rios Colon Sr.**

████████

This is not a check - Non Negotiable

## Non Negotiable - This is not a check - Non Negotiable

### Decisionone Corporation

**Omar Xavier Rios Colon Sr.**                                    **Earnings Statement**

| | | | | | | |
|---|---|---|---|---|---|---|
| Employee ID | **79745** | Fed Taxable Income | **2,651.16** | Check Date | **December 28, 2018** | Voucher Number | **106788** |
| Location | **20-140900** | Fed Filing Status | **S-2** | Period Beginning | **December 8, 2018** | Net Pay | **2,191.73** |
| Hourly | **$24.00** | State Filing Status | **S-2** | Period Ending | **December 21, 2018** | Total Hours Worked | **100.31** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| HOLIDAY | | | | 768.00 |
| OT FOR H | | | | 573.36 |
| OVERTIM | 36.00 | 20.31 | 731.16 | 5,192.64 |
| REGULAR | 24.00 | 80.00 | 1,920.00 | 28,800.00 |
| SICK | | | | 192.00 |
| **Gross Earnings** | | **100.31** | **2,651.16** | **35,526.00** |

| Deductions | Amount | YTD |
|---|---|---|
| BUSINESS EXP | -151.43 | -2,152.95 |
| REIMB MILEAGE | -51.60 | -820.80 |
| **Deductions** | **-203.03** | **-2,973.75** |

| Taxes | Amount | YTD |
|---|---|---|
| FITW | 325.54 | 3,785.11 |
| MED | 38.44 | 515.11 |
| NY | 132.91 | 1,690.93 |
| NYSDI-E | 1.20 | 19.20 |
| SS | 164.37 | 2,202.61 |
| **Taxes** | **662.46** | **8,212.96** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| BETHPAGE FEDERAL CREDIT UNION | C | ***1920 | 2,191.73 |
| **Total Direct Deposits** | | | **2,191.73** |

| Time Off | Available Plan Year to Use | Used | Current Earned |
|---|---|---|---|
| Personal | 0.00 | 0.00 | 0.00 |
| Sick | 0.00 | 8.00 | 0.00 |
| Vacation | 0.00 | 0.00 | 0.00 |

Decisionone Corporation | 640 Lee Rd 3rd Floor  WAYNE, PA 19087 | (610) 407-2757 | FEIN: 23-2328680 | NY: 7065451-6

# **<u>Exhibit 3</u>**

**Decisionone Corporation**
640 Lee Rd
3rd Floor
WAYNE, PA 19087

Direct Deposit Advice

| | Check Date | Voucher Number |
|---|---|---|
| | December 27, 2019 | 130427 |

| | Direct Deposits | Type | Account | Amount |
|---|---|---|---|---|

DIRECT DEPOSIT VOUCHER

N9665    ████████████    N9665    **Total Direct Deposits**

**Omar Xavier Rios Colon Sr.**
████████████

Non Negotiable - This is not a check - Non Negotiable

## Non Negotiable - This is not a check - Non Negotiable

### Decisionone Corporation

**Omar Xavier Rios Colon Sr.**                                                    **Earnings Statement**

| | | | | | | |
|---|---|---|---|---|---|---|
| Employee ID | **79745** | Fed Taxable Income | **0.00** | Check Date | **December 27, 2019** | Voucher Number | **130427** |
| Location | **20-140900** | Fed Filing Status | **S-2** | Period Beginning | **December 7, 2019** | Net Pay | **0.00** |
| Hourly | **$24.00** | State Filing Status | **S-2** | Period Ending | **December 20, 2019** | Total Hours Worked | **80.00** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| HOLIDAY | | | | 1,056.00 |
| NO PAY | | 80.00 | | 0.00 |
| ON CALL | | | | 300.00 |
| OT FOR H | | | | 274.32 |
| OVERTIM | | | | 6,734.88 |
| PERS ATO | | | | 192.00 |
| REGULAR | | | | 32,064.00 |
| SICK | | | | 576.00 |
| STD 50% | | | | 3,840.00 |
| | | **80.00** | **0.00** | **45,037.20** |

| Taxes | | | Amount | YTD |
|---|---|---|---|---|
| FITW | | | 0.00 | 4,591.44 |
| MED | | | 0.00 | 653.04 |
| NY | | | 0.00 | 2,045.69 |
| NYSDI-E | | | 0.00 | 27.84 |
| SS | | | 0.00 | 2,792.30 |
| | | | **0.00** | **10,110.31** |

| Deductions | Amount | YTD |
|---|---|---|
| BUSINESS EXP | | -3,949.20 |
| REIMB MILEAGE | | -1,950.00 |
| SUPPLEMENTAL ADD | | 10.08 |
| SUPPLEMENTAL LIFE | | 23.76 |
| | | **-5,865.36** |

| Direct Deposits | Type Account | Amount |
|---|---|---|

No Direct Deposits

| Time Off | Available to Use | Plan Year Used | Current Earned |
|---|---|---|---|
| Personal | 40.00 | 8.00 | 0.00 |
| Sick | 16.00 | 24.00 | 0.00 |
| Vacation | 60.00 | 0.00 | 0.00 |

# Exhibit 4

**Decisionone Corporation**
640 Lee Rd
3rd Floor
WAYNE, PA 19087

**paylocity**

Direct Deposit Advice

| | | **Check Date** | **Voucher Number** |
|---|---|---|---|
| | | December 24, 2020 | 149508 |

DIRECT DEPOSIT VOUCHER

| | Direct Deposits | Type | Account | Amount |
|---|---|---|---|---|
| | ████ | C | ████ | 1,335.87 |
| | | **Total Direct Deposits** | | **1,335.87** |

N9665        ████████        N9665
**Omar Xavier Rios Colon Sr.**
████████

This is not a check - Non Negotiable

## Non Negotiable - This is not a check - Non Negotiable

### Decisionone Corporation

**Omar Xavier Rios Colon Sr.**                                    **Earnings Statement**

| | | | | | | |
|---|---|---|---|---|---|---|
| Employee ID | **79745** | Fed Taxable Income | **1,671.94** | Check Date | **December 24, 2020** | Voucher Number | **149508** |
| Location | **20-140900** | Fed Filing Status | **S-2** | Period Beginning | **December 5, 2020** | Net Pay | **1,335.87** |
| Hourly | **$24.00** | State Filing Status | **S-2** | Period Ending | **December 18, 2020** | Total Hours Worked | **72.00** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Employer C | | 0.00 | 274.36 | 7,956.44 |
| HOLIDAY | | | | 672.00 |
| NO PAY | | | | 0.00 |
| ON CALL | | | | 793.00 |
| OT FOR H | | | | 325.92 |
| OVERTIM | | | | 735.84 |
| PERS ATO | 24.00 | 32.00 | 768.00 | 1,728.00 |
| REGULAR | | | | 33,878.64 |
| SICK | 24.00 | 24.00 | 576.00 | 727.20 |
| STD 50% | | | | 5,088.00 |
| VACATIO | 24.00 | 16.00 | 384.00 | 384.00 |
| **Gross Earnings** | | **72.00** | **1,728.00** | **44,332.60** |

| Deductions | Amount | YTD |
|---|---|---|
| BUSINESS EXP | | -3,005.25 |
| DENTAL INS | 15.06 | 376.50 |
| LONG TERM DISABILITY | | 9.70 |
| MEDICAL INS | 41.00 | 1,025.00 |
| REIMB MILEAGE | | -3,285.60 |
| SUPPLEMENTAL ADD | 0.42 | 12.18 |
| SUPPLEMENTAL LIFE | 0.99 | 30.39 |
| **Deductions** | **57.47** | **-4,837.08** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| BETHPAGE FEDERAL CREDIT UNION | C | ***1920 | 1,335.87 |
| **Total Direct Deposits** | | | **1,335.87** |

| Taxes | Amount | YTD |
|---|---|---|
| FITW | 135.81 | 3,333.77 |
| MED | 24.24 | 622.50 |
| NY | 69.75 | 1,706.03 |
| NYSDI-E | 1.20 | 30.00 |
| SS | 103.66 | 2,661.73 |
| **Taxes** | **334.66** | **8,354.03** |

| Time Off | Available to Use | Plan Year Used | Current Earned |
|---|---|---|---|
| Personal | 16.00 | 32.00 | 0.00 |
| Sick | 9.70 | 30.30 | 0.00 |
| Vacation | 44.00 | 16.00 | 0.00 |

# Exhibit B



(https://decisionone.com)

# IT Support Services

Comprehensive and Reliable IT Support Services That Keep Your Business Running Smoothly

WHAT DO YOU NEED?

## Agility and Flexibility Plus Readily Available Technicians

### EXPERIENCE THE DIFFERENCE IN OUR SUPPORT SERVICES



## AGILE AND FLEXIBLE MODEL

We offer several layers of support to choose from, depending on the size and scope of your operation. We ensure that you receive the exact level of service you require.



## HIGHLY TRAINED TECHNICIANS

Our certified technicians quickly and effectively solve IT problems, minimizing the amount of downtime your business experiences.



## 24/7 AVAILABILITY

When your business runs round-the-clock you need IT support to match. That's why we offer 24/7 helpdesk support and remote monitoring, to ensure that you're always covered.

# IT Support Services

We provide support services that help you get the most out of your IT and keep your business up and running.



### Help and support desk

Our help desk is staffed with knowledgeable technicians who can answer your questions and help you resolve any issues. We are dedicated to providing the best possible customer service and fixing your issue quickly



### Unified communications

Sending and receiving voice, data, and video communications using a single network simplifies your IT infrastructure and reduces your costs. We will work with you to design and implement a unified communications system that meets the specific needs of your business.



### System security

We offer a comprehensive security system service that includes hardware and software-based security measures. We will work with you to create a custom security plan that meets the unique needs of your business.



### Disaster recovery

Our team will get the technical side of your business back up and running as quickly as possible after a disaster so you can focus on taking care of your employees. We offer a complete disaster recovery plan that includes data backup, application, and system recovery.

● ● ●

Our technicians currently support and maintain hardware from dozens of the world's leading manufacturers, including IBM®, HP®, DellTM, Toshiba®, Sony®, Apple®, Lenovo®, Fujitsu®, NCRSM, Lexmark®, Epson®,

Okidata®, BrotherTM,
Panasonic®, Cisco®,
Netgear®, and 3M®



**CASE STUDY**

## Complex IT Support Made Easy for Commercial Airline

A major US commercial airline
was facing rising fuel costs,
diminished passenger travel,
and increased competition
from low-fare carriers. The
airline needed to reduce costs
– including IT support costs.

As a result of using our
services, the airline saw
impressive results:

- Improved IT system
  performance
- Cost savings
- Increased employee
  productivity

- Increased passenger satisfaction
- Faster equipment restoration time
- Shorter project completion time

READ MORE
(HTTPS://BA82E5.P3CDN2.SECURESERVER.NET/WP-CONTENT/UPLOADS/2022/09/S-D1-CS-US-COMMERCIAL-AIRLINE-V2R4.PDF)



CASE STUDY

# Uninterrupted Operations with Minimized Administrative Cost for Multinational Auto Parts Retailer

A multinational auto parts retailer needed an IT Support partner to provide help desk services, onsite desktop support, and replacement parts support to 10,000+ repair centers in five countries. The

company needed a single-source IT partner to minimize administration costs.

After providing multiple levels of support, the changes were readily apparent:

- Uninterrupted operation of 10,000+ locations across North and Central America
- Reduced administration costs
- 100% of SLA requirements achieved
- 97%+ first call resolution rate

READ MORE (HTTPS://BA82E5.P3CDN2.SECURESERVER.NET/WP-CONTENT/UPLOADS/2022/09/S-D1-CS-US-AUTO-PARTS-V2R3.PDF)



**C A S E   S T U D Y**

# National Department Store Realizes Consistent Performance with Integrated IT Solution

A national chain of department stores needed IT solutions for onsite maintenance, logistics, and depot repair of its PCs, laptops, point-of-sale (POS) equipment, network equipment, and handheld devices, in addition to offering an advanced exchange program and services to ramp up quickly for the holiday shopping season.

After enlisting our services, our client quickly saw measurable results:

- 30-day ramp-up from contract award to support provided
- More than 6,100 shipments per month
- Less than 1% rate of repeat returns without calling on manufacturers
- Brand new advanced exchange created
- Single-Point-of-Contact for all device repairs
- 97% of device repairs resolved in-house

READ MORE
(HTTPS://BA82E5.P3CDN2.SECURESERVER.NET/WP-
CONTENT/UPLOADS/2022/09/S-
D1-CS-NATIONAL-
DEPARTMENT-STORE-
V2R3.PDF)









# Recommended by Industry Leaders

## WE GO ABOVE AND BEYOND



### MULTINATIONAL AUTO PARTS RETAILER

"Our relationship with [the team] extends beyond service delivery. As a single-source provider [they] not only minimize administration costs but also enable us to focus on taking care of our customers, not on computer hardware."



### COMMERCIAL

**AIRLINE**

"They enabled us to reduce our total cost of ownership, improve quality operations, and enhance service levels. Their ability to adapt to our industry's ever-changing security requirements ensured consistent service delivery, minimizing system downtime."

# IT Support Services Tailored To Your Needs

We understand that every business has different IT support service needs. That's why we offer customized solutions that can be tailored to include only the services you require. To discuss your specific needs and budget, contact us today. We'll be happy to provide a free consultation and proposal.

First Name*

Last Name*

Company

Email*

Phone*

Job Title ▾

Reason for Contacting ▾

## Additional Interest Areas

☐ IT Asset Management

☐ Digital Signage Services

☐ Technology Deployment

☐ Staff Augmentation

☐ Technology Consulting

What Challenges are you facing?

SUBMIT



(https://decisionone.com)

CONTACT US

📍 640 Lee Road | Third Floor
Wayne, PA 19087

📞 800.767.2876 / 610.296.6000

✉ (mailto:sales@decisionone.com)    sales@decisionone.com (mailto:sales@decisionone.com)

SOLUTIONS

IT Asset Management    (https://decisionone.com/it-asset-management/)

IT Support

Services (https://decisionone.com/it-
support-services/)

Staff          (https://decisionone.com/staff-
Augmentation augmentation/)

Digital        (https://decisionone.com/digital-
Signage        signage/)
Services

Technology (https://decisionone.com/technology-
Deployment deployment/)

Technology (https://decisionone.com/technology-
Consulting consulting/)

---

## WE ARE SOCIAL

f (https://www.linkedin.com/company/7020?
(https://www.facebook.com/DecisionOne/)
mpanies_res_name&trkInfo=VSRPsearchId%3A4385356361462207323820%2CVSRPtargetId%3A7

# Exhibit C

  



# DecisionOne

Your ONE solution provider for any IT Infrastructure Need

IT Services and IT Consulting · Wayne, Pa · 6,131 followers · 501-1,000 employees

Follow    Visit website ⤴    More

Home    About    Posts    Jobs    More ▾

## About

DecisionOne Corporation is the largest global independent technology support organization in the TPM and ISO markets. For more than 60 years, we have delivered comprehensive IT solutions to some of the most complex enterprises in the world—including retail, healthcare, transportation, financial services, and government. DecisionOne maintains the largest W-2 field workforce of all TPMs and ISOs that provide support and professional services.

Our portfolio includes Managed Services providing outsourced remote solutions and support desk services, state-of-the-art technology centers that provide a suite of hardware and software asset services along with supporting forward/reverse logistics and supply chain management services. As a services-only provider, DecisionOne serves as a vendor-agnostic partner who helps companies reduce operating costs, extend technology life, and optimize their technology infrastructure. Our highly skilled, scalable workforce provides a single source of world-class IT support that meets the demands of a diverse client base anywhere, anytime.

For more information, contact us at sales@decisionone.com

Show all details →

## Page posts    ‹  ›



**DecisionOne**
6,131 followers
7mo · 🌐

DecisionOne offers several layers of IT support to choose from, depending on the size and  ...see more



🔵 4 · 2 comments

○ ○ ○ ○ ○

Show all posts →

## Recent job openings

 **Desktop Support Technician**
Kansas City, KS

**Help Desk Analyst - 1st Shift**
Pennsylvania, United States

Show all jobs →

🟧 **PREMIUM**

## Insights on DecisionOne ❓

**Total employees**

900

450

Oct 2021   Apr 2022   Oct 2022

🔻**1%**
Total headcount growth
6 months

🕐 **12 years**
Median tenure

Show all Premium insights →

About                          Accessibility

Talent Solutions               Community Guidelines

Careers                        Marketing Solutions

Privacy & Terms ▾              Ad Choices

Advertising                    Sales Solutions

Mobile                         Small Business

Safety Center

❓ **Questions?**
Visit our Help Center.

⚙️ **Manage your account and privacy**
Go to your Settings.

🛡️ **Recommendation transparency**
Learn more about Recommended Content.

# Exhibit D

**Garrett Kaske**

---

**Subject:**          FW: Pay.gov Payment Confirmation: NEW YORK EASTERN DISTRICT COURT


-----Original Message-----
From: do_not_reply@psc.uscourts.gov <do_not_reply@psc.uscourts.gov>
Sent: Thursday, July 13, 2023 5:58 PM
To: Troy Kessler <tkessler@kesslermatura.com>
Subject: Pay.gov Payment Confirmation: NEW YORK EASTERN DISTRICT COURT

Your payment has been successfully processed and the details are below. If you have any questions or you wish to cancel this payment, please contact: Financial Department at (718)613-2580.

  Account Number: 3012937
  Court: NEW YORK EASTERN DISTRICT COURT
  Amount: $402.00
  Tracking Id: ANYEDC-16890214
  Approval Code: 04370G
  Card Number: ************8466
  Date/Time: 07/13/2023 05:58:12 ET


NOTE: This is an automated message. Please do not reply

# INVOICE

**The Servinator, Inc.**
41 State Street, 604-13
Albany, NY 12207

servinator@servinator.com
(518)432-7378

## Kessler Matura PC

**Bill to**
Kessler Matura PC

**Invoice details**
Invoice no.: 1664
Terms: Due on receipt
Invoice date: 08/04/2023
Due date: 08/04/2023

| # | Date | Product or service | SKU | Amount |
|---|------|--------------------|-----|--------|
| 1. | | **NYSDOS Service** | | $72.68 |
| | | Decisionone Corporation via NYSDOS (32pp) | | |

| | | |
|---|---|---|
| | **Total** | **$72.68** |

### Ways to pay

Apple Pay · VISA · Mastercard · DISCOVER · AMEX · BANK

| | |
|---|---|
| Overdue | 08/04/2023 |



**FedEx Billing Online**

## Tracking ID Details Back

### Tracking ID Summary                                              Help Hide

**Billing Information**

| | |
|---|---|
| Tracking ID no. | 773147029266 |
| Invoice no. | 5-837-77169 |
| Account no. | 6142-8548-6 |
| Bill date | 08/23/2023 |
| Total Billed | $22.71 |
| **Tracking ID Balance due** | **$0.00** |
| Status | Paid CC |

View Invoice History
View signature proof of delivery

**Messages**

Fuel Surcharge - FedEx has applied a fuel surcharg Read More.
Distance Based Pricing, Zone 2

### Transaction Details                                             Help Hide

**Sender Information**

Kessler Matura, P.C.
Troy Kessler
534 Broadhollow Road
Ste. 275
MELVILLE NY 11747
US

**Recipient Information**

DecisionOne Corporation
640 Lee Road, Third Floor
WAYNE PA 19087
US

**Shipment Details**

| | |
|---|---|
| Ship date | 08/23/2023 |
| Tendered date | 08/23/2023 |
| Payment type | Shipper |
| Service type | FedEx Standard Overnight |
| Zone | 02 |
| Package type | FedEx Envelope |
| Rated weight | 0.50lbs |
| Pieces | 1 |
| Rated method | 1 |
| Meter No. | 107365759 |
| Declared value | |

**Charges**

| | |
|---|---|
| Transportation Charge | 29.54 |
| Fuel Surcharge | 3.42 |
| Discount | -10.25 |
| **Total charges** | **$22.71** |

**Original Reference**

| | |
|---|---|
| Customer reference no. | NO REFERENCE INFORMATION |
| Department no. | |
| Reference #2 | |
| Reference #3 | |

**Proof of Delivery**

| | |
|---|---|
| Delivery date | 2023-08-24T12:53:0012:53 |
| Service area code | A1 |
| Signed by | O.DECISIONS |

View signature proof of delivery

Back

# **Exhibit E**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------X

OMAR RIOS COLON, on behalf of himself and all
others similarly situated,

                                 Plaintiff,

    - against -

DECISIONONE CORPORATION,

                                 Defendant.

------------------------------------------X

Case No.: 23 Civ. 5346 (JMA)(ARL)

## [PROPOSED] ORDER AND JUDGMENT

Before the Court is Plaintiff Omar Rios Colon's renewed motion for default judgment against Defendant DecisionOne Corporation ("Defendant"), for Defendant's failure to pay timely wages in violation of the 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL") § 198 *et seq*.  For the reasons stated herein, Plaintiff's motion for a default judgment is GRANTED.

### I.    DISCUSSION

#### A.  Defendant Defaulted.

Defendant was properly served with a summons and a copy of the complaint on July 27, 2023.  (Docket Entry ("DE") 6.)  According to the record, no answer, motion or other appearance was filed on behalf of Defendant.  As a result, the Clerk properly entered notation of default on September 14, 2023, pursuant to Fed. R. Civ. P. 55(a). (DE 9.)

#### B.  Liability.

When a defendant defaults, the Court is required to accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, the Court also must determine whether the allegations in the complaint establish the defendant's liability as a matter of law. *Id*.

The Court finds that the Complaint's well-pleaded allegations meet the jurisdictional prerequisites of the relevant FLSA and NYLL provisions. *See* 29 U.S.C. § 207(a)(1); NYLL §§ 2, 190 to 199-A; *see also Guerrero v. Danny's Furniture Inc.*, No. 19 Civ 7284, 2021 WL 4155124, at *2 (S.D.N.Y. Sept. 13, 2021). The Court further finds that the Complaint establishes violations of: (i) the obligation to promptly pay an employee under the FLSA;[1] and (ii) the prompt-payment requirements of the NYLL.[2]

### C. Damages.

"'[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 189 (2d Cir. 2015) (*quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc*., 699 F.3d 230, 234 (2d Cir. 2012)). The Court must conduct an

---

[1] The FLSA imposes a prompt payment requirement. *Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 55 (2d Cir. 1998); *Rosenbaum v. Meir*, No. 20 Civ. 4520, 2023 WL 2305960, at *5 (E.D.N.Y. Mar. 1, 2023). This obligation flows from Section 206(a) of the FLSA. *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp.3d 336, 353 (S.D.N.Y. 2014). When considering whether a payment of wages was not sufficiently prompt, courts apply an objective analysis. *Rosenbaum*, 2023 WL 2305960, at *5; *see, e.g.*, *Strain v. Sw. Airlines Co.*, No. 24 Civ. 8885, 2025 WL 1384156, at *1 (E.D.N.Y. May 13, 2025) ("[A] violation of NYLL § 191 could be one factor suggesting—and indeed an objective indication—that [the defendant] did not promptly pay its employees [promptly], and therefore constitute a violation of FLSA."). Here, Plaintiffs have sufficiently alleged claims against Defendant for late-paid wages under the FLSA. (DE 1 (Compl.) ¶¶ 1-4, 6, 11-23, 67-75).

[2] The NYLL requires employers to pay manual workers no more than seven days after the end of each workweek. N.Y. Lab. Law § 191(1)(a). Manual workers are employees that perform physical labor. *Beh v. Cmty. Care Companions Inc*., No. 19 Civ. 1417, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) ("[C]arpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be 'manual workers.'" (collecting authorities)), *adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021). An employee qualifies as a manual worker if more than 25% of their workday is devoted to physical labor. *See* N.Y. Dep't of Lab., Op. Ltr, No. RO-08-0061 (December 4, 2008). Here, Plaintiff sufficiently alleged that he was a manual worker and was paid every other week. (DE 1 (Compl.) ¶¶ 1-4, 11-23, 47-48, 51-66, 76-81).

inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (*citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

In his default judgment motion, Plaintiff seeks recovery of liquidated damages. The Court finds that Plaintiff's submissions, including the declarations and attached exhibits, establish $3,995.22 in damages – $3,868.96 under the FLSA[3] and 126.26 under the NYLL[4] – to a reasonable certainty.

### D. Costs.[5]

Plaintiff requests litigation costs of $497.39 for filing fees, shipping costs, and process server fees. (DE 19 (Kaske Decl.) ¶ 18; DE 19-4, Ex. D (Invoices).)    The Court accepts this figure as reasonable and awards Plaintiffs $497.39 in costs.[6]

### E. Post-Judgment Interest and the NYLL's Automatic Increase.

The undersigned orders Defendant to pay post-judgment interest, to be calculated from the date the Clerk of Court enters this judgment until the date of payment, at the rate set forth in 28

---

[3] Under "the FLSA, Plaintiffs are entitled to liquidated damages equal to 100% the minimum wages for the untimely payments." *Coley v. Vannguard Urban Improvement Assoc.*, 12 Civ. 5565, 2018 WL 1513628, at * 14 (E.D.N.Y. Mar. 27, 2018). Under the NYLL, employers who paid semi-monthly wages on a regular payday are subject to damages of "no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect." N.Y. Lab. Law § 198(1-a)(i).

[4] Because the FLSA provides for a greater recovery but a shorter statute of limitations, Plaintiffs' damages distinguish the FLSA-covered period from the NYLL-covered period.

[5] Plaintiffs have not requested attorneys' fees in connection with the instant default judgment. (DE 19 (Kaske Decl.) ¶ 19).

[6] Costs generally include filing fees, service fees, and postage. *See Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 109 (E.D.N.Y. 2015) (collecting cases).

U.S.C. § 1961.[7]  (*See* DE 1 (Compl.) at 12 (requesting post-judgment interest).)  "Under the statute, interest is calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [the date of the judgment." *Diaz*, 2022 WL 4646866, at *12 (citing 28 U.S.C. § 1961(a)).

In accordance with Section 198(4) of the NYLL, the undersigned orders that if the judgment remains unpaid after 90 days, or 90 days after expiration of the time to appeal and no appeal is pending, the total amount of the NYLL portion of the judgment – that is, $94.73 – automatically increases by 15%.[8]

## CONCLUSION

For the foregoing reasons, the undersigned grants Plaintiff's motion, and awards damages in a manner consistent with this opinion.

**SO ORDERED.**

_____                    _____
    JOAN M. AZRACK, United States District Judge                    Date

---

[7] Plaintiff is entitled to post-judgment interest on all money awards.  *Tacuri v. Nithin Constr. Co.*, No. 14 Civ. 2908, 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (awarding post-judgment interest on "all sums awarded, including attorney fees and costs"); *see, e.g.*, *Diaz v. Rene French Cleaners, Inc.*, No. 20 Civ. 3848, 2022 WL 4646866, at *12 (E.D.N.Y. Aug. 29, 2022) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (cleaned up)), *adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).

[8] The NYLL provides for an automatic increase to the value of this judgment if it remains unpaid after 90 days.  N.Y. Lab. Law §§ 198(4); 663(4).  This one-time-enforcement mechanism is distinct from post-judgment interest, as interest will continue to accrue until payment is made. *Diaz*, 2022 WL 4646866, at *13.  This one-time penalty "should not be imposed in lieu of a post-judgment interest award at the federal rate."  *Id*. ("[M]any courts in this District have found that the application of both 28 U.S.C. § 1961 and NYLL §§ 198(4) and 663(4) is not mutually exclusive." (collecting cases)).  The increase only applies to damages awarded under the NYLL. *See, e.g.*, *Jacome v. Optical 49, Inc*., No. 12 Civ. 2615, 2021 WL 3375134, at *13 (E.D.N.Y. July 9, 2021), *adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021).

# Exhibit F

**Decisionone Corporation**
640 Lee Rd
3rd Floor
WAYNE, PA 19087

◉ paylocity

Direct Deposit Advice

| | Check Date | Voucher Number |
|---|---|---|
| | July 10, 2020 | 141299 |

DIRECT DEPOSIT VOUCHER

| | Direct Deposits | Type | Account | Amount |
|---|---|---|---|---|
| | ▉▉▉▉ | C | ▉▉▉ | 1,447.96 |
| | **Total Direct Deposits** | | | **1,447.96** |

N9665    ▉▉▉▉▉▉▉    N9665
**Omar Xavier Rios Colon Sr.**

This is not a check - Non Negotiable

## Non Negotiable - This is not a check - Non Negotiable

### Decisionone Corporation

**Omar Xavier Rios Colon Sr.**                                    **Earnings Statement**

| | | | | | |
|---|---|---|---|---|---|
| Employee ID | **79745** | Fed Taxable Income | **1,578.34** | Check Date | **July 10, 2020** | Voucher Number | **141299** |
| Location | **20-140900** | Fed Filing Status | **S-2** | Period Beginning | **June 20, 2020** | Net Pay | **1,447.96** |
| Hourly | **$24.00** | State Filing Status | **S-2** | Period Ending | **July 3, 2020** | Total Hours Worked | **65.60** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Employer C | | 0.00 | 274.36 | 4,664.12 |
| HOLIDAY | 24.00 | 8.00 | 192.00 | 480.00 |
| NO PAY | | | | 0.00 |
| ON CALL | | 0.00 | 60.00 | 223.00 |
| OT FOR H | | | | 325.68 |
| PERS ATO | | | | 960.00 |
| REGULAR | 24.00 | 57.60 | 1,382.40 | 15,590.16 |
| STD 50% | | | | 5,088.00 |
| **Gross Earnings** | | **65.60** | **1,634.40** | **22,666.84** |

| Taxes | | Amount | YTD |
|---|---|---|---|
| FITW | | 124.57 | 1,563.39 |
| MED | | 22.89 | 318.13 |
| NY | | 64.05 | 812.36 |
| NYSDI-E | | 1.20 | 15.60 |
| SS | | 97.86 | 1,360.16 |
| **Taxes** | | **310.57** | **4,069.64** |

| Deductions | Amount | YTD |
|---|---|---|
| BUSINESS EXP | -52.00 | -603.00 |
| DENTAL INS | 15.06 | 195.78 |
| LONG TERM DISABILITY | | 9.70 |
| MEDICAL INS | 41.00 | 533.00 |
| REIMB MILEAGE | -129.60 | -698.80 |
| SUPPLEMENTAL ADD | 0.42 | 7.14 |
| SUPPLEMENTAL LIFE | 0.99 | 18.51 |
| **Deductions** | **-124.13** | **-537.67** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| BETHPAGE FEDERAL CREDIT UNION | C | ***1920 | 1,447.96 |
| **Total Direct Deposits** | | | **1,447.96** |

| Time Off | Available Plan Year to Use | Used | Current Earned |
|---|---|---|---|
| Personal | 48.00 | 0.00 | 0.00 |
| Sick | 40.00 | 0.00 | 0.00 |
| Vacation | 26.67 | 0.00 | 6.67 |

# Exhibit G

```
 1                 UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF NEW YORK

 3       FELICIANO ET AL.,            .    Docket No.
                                      .    1:25-cv-01929-RER-LKE
 4            Plaintiffs,             .
                                      .
 5            v.                      .    Brooklyn, New York
                                      .    Thursday, August 14, 2025
 6       JPJ FRANKLIN LLC ET          .
         AL.,                         .
 7                                    .
              Defendants.             .
 8       . . . . . . . . . . . . .    .

 9              TRANSCRIPT OF PRE MOTION CONFERENCE
              BEFORE THE HONORABLE RAMON E. REYES, JR.
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiffs:        Kessler Matura P.C.
                                GARRETT D. KASKE, ESQ.
13                              534 Broadhollow Road
                                Suite 275
14                              Melville, New York  11747
                                631-499-9100
15
                                Werman Salas P.C.
16                              SALLY JASMINE ABRAHAMSON, ESQ.
                                609 H Street Northeast
17                              4th Floor
                                Washington, D.C.  20002
18                              202-830-2016

19   For the Defendants:        Sage Legal LLC
                                EMANUEL KATAEV, ESQ.
20                              18211 Jamaica Avenue
                                Jamaica, New York  11423
21                              718-412-2421

22   Transcription Service:     Superior Reporting Services LLC
                                P.O. Box 5032
23                              Maryville, TN 37802
                                865-344-3150
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

                            P R O C E E D I N G S

1           THE CLERK:  Civil cause for pre-motion conference

2   in 25-cv-1929, Feliciano, et al. versus JPJ Franklin, LLC, et

3   al., before the Honorable Ramon E. Reyes, United States

4   District Judge, presiding.

5           Counsel for Plaintiffs, please state your name.

6           MR. KASKE:  Good morning, Your Honor.  This is

7   Garrett Kaske from the law firm of Kessler Matura, for

8   Plaintiff.

9           THE COURT:  Good morning.

10          MS. ABRAHAMSON:  Good morning.  Sally Abrahamson

11  from Werman Salas, also on behalf of Plaintiffs.

12          THE COURT:  Good morning.

13          And counsel for Defendants.

14          MR. KATAEV:  Emanuel Kataev of Sage Legal LLC for

15  the Defendants.  Good morning, Your Honor.

16          THE COURT:  Good morning.

17          This is Defendants' proposed motion, so why don't

18  you tell me about it, Mr. Kataev?

19          MR. KATAEV:  Yes, Your Honor.  The Fair Labor

20  Standards Act provides that employer shall pay to each of his

21  employees not less than the minimum wage, and it does not

22  specify when it must be paid.  It only requires that the

23  wages be paid in a timely fashion.  The complaint alleges

24  here that they were paid weekly, but meekly suggests, through

1    inference and innuendo that somehow the checks were held,

2    that they were paid a week later than originally intended.

3    This makes no sense for a lot of reasons.

4              THE COURT:  Why doesn't it make any sense?

5              MR. KATAEV:  For one thing, Your Honor --

6              THE COURT:  The employer gets to hold onto the

7    money for an extra week and earn whatever meager interest

8    they're paying these days on bank accounts.

9              MR. KATAEV:  Your Honor, this is not a

10   sophisticated (indiscernible) who's earning interest on his

11   bank account.  Courts are permitted to read complaint

12   allegations and utilize common sense.  The reason why

13   biweekly payroll is done is to save money on the printing and

14   labor involved in printing paychecks.  It's a cost-savings

15   measure for payroll costs in the sense that you'd pay a

16   payroll company to print those checks.  It makes absolutely

17   no sense to print weekly checks but hold onto the money.  And

18   I just don't --

19             THE COURT:  I don't know that I agree with that.

20   But there are also manual laborers, and the labor law

21   requires them to be paid weekly.

22             MR. KATAEV:  Correct.  No disagreement there.  My

23   point is --

24             THE COURT:  So if we take supplemental jurisdiction

25   over this, over the labor law claims, you've got a problem.

4

1    Your client has a problem.

2              MR. KATAEV:  I disagree.  I don't think there's a

3    problem.  The complaint doesn't say that the employer failed

4    to pay them on a weekly basis.  The complaint suggests that

5    the employer may have held onto these checks even though

6    they're printed weekly.  It makes no sense to me.  I don't

7    think there's enough there.  I think they need more in there

8    to show that --

9              THE COURT:  This is a motion to dismiss.

10             MR. KATAEV:  For failure to state a claim.

11   Correct.

12             THE COURT:  Right.  So the allegations in the

13   complaint are deemed to be true.  And if they're making that

14   allegation that although the checks were dated weekly, they

15   weren't given weekly, they were given biweekly, we're stuck

16   with that, and that states at the very least a valid labor

17   law claim.

18             MR. KATAEV:  I'm not sure.  The complaint says

19   that, "Despite purporting to issue weekly paychecks,

20   Defendants withheld every other weekly paycheck for an extra

21   week, and as a result, they only provided paychecks on a

22   biweekly basis."  First and foremost, that generalized

23   allegations isn't sufficient.  The Fair Labor Standards Act

24   requires that the Plaintiff provide an example of at least

25   one week in which they were not properly paid.  These kind of

1    generalized allegations have been rejected repeatedly by the

2    Second Circuit in the trilogy of cases of Dejesus, Nakahata,

3    and Lundy.

4         I recently, a few years ago, prevailed in the

5    Second Circuit after obtaining a dismissal for a similar

6    claim, for overtime, not for not paying timely, where there

7    were similar generalized allegations --

8         THE COURT:  The Lundy line of cases concern

9    the -- if I'm remembering it correctly, the number of hours

10   worked in a pay period, not a pay frequency argument.  And

11   even aside from that, the specific allegations here, you

12   know, they don't have to say, "On June 1st, I was given both

13   checks for, you know, May whatever week and the June week."

14   You know, it doesn't have to be that specific.  I mean, we

15   have allegations from both of the Plaintiffs on when they

16   were working, the period of employment, and "I didn't get

17   weekly checks.  I got them every other week, two checks."  I

18   see that as being fine.

19        MR. KATAEV:  I don't know.  I'm looking at

20   paragraph 35 and paragraph 18.  Mirror images of each other.

21   One for each Plaintiff.  "Defendants prepared" --

22        THE COURT:  Hold on just one second.  35 and 18.  I

23   want to pull that up.

24        Yeah.  35 and 18, you said?

25        MR. KATAEV:  Yes, Your Honor.  "Defendants prepared

6

1    Plaintiffs' checks on a weekly basis, but only provided the

2    paychecks to the Plaintiff on a biweekly basis.  As a result,

3    they failed to pay every week."

4            There are so many issues with this.  Even accepting

5    these allegations as true, they don't provide sufficient

6    detail to really hone in on the fact that they failed to pay

7    every week.  This is a conclusory statement.  They have to

8    provide more information.  They have to state, you know, at

9    least one example based on Lundy, Nakahata, and Dejesus.

10           THE COURT:  What case stands for that proposition

11   that they have to give one specific example of the frequency

12   of pay?

13           MR. KATAEV:  There is no case like that, but I'm

14   arguing by analogy, Your Honor, this is insufficient because

15   it's not clear.  You know, what about direct deposit?  Did

16   they reject direct deposit?  You know, were they receiving --

17           THE COURT:  Okay.  You're asking for far too much

18   specificity.  The federal courts are on notice pleading.

19   This is -- I consider it to be ample notice of a pay

20   frequency claim.  They weren't paid every week.  They were

21   paid every other week during their period of employment.

22   That's enough.  Discovery can reveal the specifics.  Yeah.

23           So why don't you tell me about the rest of your

24   motion?

25           MR. KATAEV:  My other aspect of my motion is that

1    there is -- the Court should exercise its discretion against

2    making supplemental jurisdiction over the Fair Workweek Law

3    claims.  The frequency of pay issue is completely separate

4    and apart from how they were scheduled to work.  There is no

5    common nucleus of operative facts there.  Their receiving

6    their schedules has nothing to do with when they are paid.

7    It's a completely separate claim.

8            There are no overlapping facts at all with respect

9    to that.  This piggybacking is inappropriate.  There's no

10   federal claims that it's tied to.  And based on that, those

11   claims should drop too, without prejudice.  Which to pursue

12   it in state court, they're welcome to do so.  I'm not even

13   sure they can do it in state court.

14           THE COURT:  Mr. Kaske, you want to respond to that?

15           MR. KASKE:  Yeah.  I would say, Your Honor, that

16   this situation is very different than those I know the Court

17   has dealt with in the past, where someone brings, for

18   example, a discrimination claim and a wage-an-hour claim

19   together.  And although there may be some same actors

20   involved in the underlying baseline of the fact that, you

21   know, it's the same workplace, the incidents that led to the

22   violations are completely different.

23           This is a situation where the heart of a late

24   payment claim is that folks were scheduled to work, did work,

25   and then were not paid on time, okay?  Which involves

 1   discovery and information from managers, from the payroll

 2   system, and from the scheduling processes that they use.

 3        The related issue is that the Fair Workweek claims

 4   revolve -- the front half of the Fair Labor Standards Act

 5   case, right, of the fact that folks were scheduled to work

 6   certain shifts, when were they scheduled?, and did they work

 7   those shifts?  And if so, what were they paid?  Which then

 8   brings us into the payroll portion of the Fair Labor

 9   Standards Act case.

10        So this is one in which it's not just the

11   employment relationship that Plaintiffs are claiming

12   constitutes the operative facts, right, the common nucleus of

13   operative facts, but rather it's the entire payroll process

14   that is at issue in both claims.  When were people working?

15   When were they told they worked?  Did they work those shifts?

16   And what were they paid?

17        THE COURT:  Mr. Kataev, is there anything else you

18   want to raise about your motion?

19        MR. KATAEV:  Yes.  Although I understand the

20   Court's position on it, I do still wish to proceed with the

21   motion.  That's the first part.  As to the second part, I

22   think Counsel's description of the flow of the claims, you

23   know, we start with the frequency, we start with when they

24   were scheduled, and then we move into when they were paid,

25   demonstrates that there's no common nucleus of operative

1    facts, because there's one issue and then there's another

2    issue.  And because of that, the Court should not exercise

3    supplemental jurisdiction --

4              THE COURT:  Okay.  Let me ask you a question, Mr.

5    Kaske.  I was looking at the complaint before we got on the

6    call.

7              MR. KASKE:  Yes, Your Honor.

8              THE COURT:  And I noticed the collective

9    allegations in the class -- not the allegations.  The

10   definition of the collective and the class and the Rule 23

11   class, and it's pretty broad.  I'm wondering about, like,

12   what happened?  Where did these two Plaintiffs work,

13   physically?  Was it the same Checkers --

14             MR. KASKE:  Yeah.

15             THE COURT:  -- location or two different ones?

16             MR. KASKE:  So the two Plaintiffs worked at two

17   different Checkers locations.  We've named three Checkers

18   locations that are all commonly owned by -- that are all

19   located in New York City that are all owned by the same

20   individual.  We made allegations in the complaint as well

21   about some of the interrelated management processes here,

22   just, you know, to demonstrate to the Court that there are

23   common connections, in addition to the policies, but also to,

24   like, management and such for the three related entities.

25   You know, the complaint isn't going after all Checkers in the

1    state.  It's just these three that are held by this specific

2    franchise owner.  Franchisee.

3              THE COURT:  You have no Plaintiff that worked in

4    the third location?

5              MR. KASKE:  Correct.

6              THE COURT:  What evidence do you have that that

7    third location had the same pay practice?

8              MR. KASKE:  In the complaint, we don't have any,

9    you know, direct evidence from a Plaintiff related to that.

10   In our own investigation, we feel confident that, through

11   discovery, we'll be able to show that there were the same

12   practices going on at that other location.  But specifically

13   in allegations in the complaint for which you can take an

14   inference that there are common policies across all three

15   entities, and the fact that, you know, we've named two of

16   three that were all owned by the same individuals.  I would

17   direct the Court to the allegations starting in 59 and

18   running through 75.

19             And you know, some of the, I think, key facts there

20   are that Mr. Josan (ph.) was a member of all three

21   Defendants.  He's an owner of each Defendant.  You know, he

22   holds himself out to be the owner of each Defendant.  He has

23   franchise agreements with Checkers, you know, big Checkers.

24   With regards to these Defendants as well that employees were

25   transferred between the Defendant locations, the three at

 1 | issue and that they share a common operations manager, who

 2 | was hired by Mr. Josan as well.  And Mr. Josan visits all the

 3 | stores.

 4 | I think from those allegations, I think it's easy

 5 | to make an inference that the entity at which we do currently

 6 | have a named Plaintiff working there in the complaint, that

 7 | they were working under the same payroll and scheduling

 8 | practices.

 9 | MR. KATAEV:  Your Honor, can I be heard?

10 | THE COURT:  All right.  Well, we're not at the

11 | collective certification stage or the class stage, and who

12 | knows if we will actually get there?  But I think to certify

13 | a collective you need -- or a class, you would need more than

14 | an inference.  You would need evidence of a pay practice and

15 | sort of the scheduling to get those certified.

16 | MR. KASKE:  Correct, Your Honor.

17 | THE COURT:  All right.  Under my rules, my

18 | individual practice rules, I reserve the right to deem

19 | motions as having been made on the pre-motion letters, and I

20 | will do that here.  I'm going to deem the motion to dismiss

21 | as having been made, and I'm going to deny it.  I think the

22 | allegations in the complaint are sufficient to raise a pay

23 | frequency claim.  And frankly, it would be inefficient to

24 | dismiss the --

25 | MR. KATAEV:  Fair Workweek.

```
1              THE COURT:  -- Fair Workweek claims just to send

2    you to state court where you would be likely engaging in a

3    lot of the same discovery.  So I will exercise supplemental

4    jurisdiction over the Fair Workweek claims.

5              You folks have not yet met with Magistrate Judge

6    Eshkenazi, or have you?

7              MR. KATAEV:  We have not.

8              MR. KASKE:  We have not, Your Honor.

9              THE COURT:  Okay.  I'm going to ask her to convene

10   an initial conference with you.  I would like you to

11   seriously consider consenting to her jurisdiction for all

12   purposes.  She's a great magistrate judge and I'm sure she

13   will handle you very well.  And also, whether you consent to

14   her jurisdiction or not, you should seriously consider trying

15   to resolve this, short of full-blown litigation.

16             Have there been any discussions about that?

17             MR. KATAEV:  We've had preliminary discussions, but

18   regrettably, the only discussion Plaintiffs were willing to

19   have were on the class and collective action-wide basis.  One

20   of the Plaintiffs worked for a few months in '23.  The other

21   one worked for a few months in '21.  Client's not prepared to

22   do that.

23             I would, however, request that the Court consider

24   issuing a mediation referral order to give it the good old

25   college try, because my clients may be willing to not
```

1   necessarily agree to a class or collective action-wide

2   settlement, but maybe do a settlement that will make the two

3   Plaintiffs and their attorneys happy enough to do away with

4   that, and would encourage.

5          THE COURT:  Mr. Kaske, do you want to respond to

6   that?

7          MR. KASKE:  Yeah.  To just confirm that we had

8   preliminary discussions before filing the lawsuit, given what

9   we were seeking to resolve it and the toll we were looking

10  for and such, conversations broke down and we filed and now

11  here we are.  I think we're happy to review potential

12  mediation, but I would suggest that we do that with the

13  magistrate's guidance to work into the magistrate's schedule.

14         THE COURT:  All right.  I will leave that to Judge

15  Eshkenazi.  I think it's probably a good idea to seriously

16  consider that, whether you mediate on an individual basis or

17  a class-wide basis.

18         I mean, really, if we're talking about the pay

19  frequency claim, didn't the legislature sort of severely

20  limit the damages that Plaintiffs can get for those claims?

21         MR. KASKE:  Yes.  They did.  Sixteen percent

22  interest for the duration of the delay.

23         THE COURT:  Which someone who's making minimum

24  wage --

25         MR. KASKE:  It's pennies on the dollar.  Yeah.

1          THE COURT:  Yeah.  So even if you were to settle on

2    a class-wide basis, really not going to break the bank.  I

3    don't know how big these locations are, but you know -- or

4    how many employees they have.  So whether you mediate on the

5    class-wide basis or an individual basis, it's not going to be

6    great recovery, I wouldn't think.  But talk to Judge

7    Eshkenazi about that.  I'm sure she'll pull you in very

8    quickly, so be prepared for a scheduling order.

9          MR. KASKE:  Great.  Thank you.

10          THE COURT:  All right?  Okay.  Anything else?

11          MR. KASKE:  Nothing from Plaintiffs.

12          MR. KATAEV:  Nothing for the Defendants.  Thank

13    you, Your Honor.

14          THE COURT:  All right.  Thank you folks.

15          MR. KASKE:  Thank you, Your Honor.  Thank you,

16    everybody.  Take care.

17     (Proceedings adjourned)

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATE

2            I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter.

5

6    *Laura Hunt*                        August 18, 2025

7

8    _____    _____

9    Laura Hunt                          DATE

10   Legal Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25